# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                    **Case Nos.:  4:09cr73/RH/CAS**
                                                    **4:12cv301/RH/CAS**

**REGINALD VOLTAIRE**

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, memorandum and supplement (docs. 297–299).  The Government filed a response (doc. 308) and Defendant filed a reply (doc. 316).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant Reginald Voltaire was charged in three counts of a nine count superseding indictment[1] with various financial crimes (doc. 44).  Count One charged Defendant and six others with conspiracy to use unauthorized access devices in violation of 18 U.S.C. § 371 and 1029(b)(2).  The conspiracy involved two groups of individuals.  Four of the defendants were cashiers at Circle K Convenience Stores in Tallahassee who surreptitiously obtained debit card account numbers and PINs from customers at the two stores.  Defendant and others, in turn, obtained the debit card account numbers and PINs from the cashiers, transferred the account information to other cards, and fraudulently obtained money using the stolen account numbers through ATMs and other transactions.  Count Two charged Defendant and six others with trafficking in and using one or more unauthorized access devices to obtain things of value aggregating more than $1000 during a one year period in violation of 18 U.S.C. §§ 1029(a)(2), 1029(c) and 2, i.e. fraud in connection with counterfeit credit cards or other access devices.   Count Seven charged Defendant with knowingly transferring, possessing and using without lawful authority a means of identification of another person, namely access devices described as debit card account numbers and PINs during and in relation to the felonies charged in Counts One and Two in violation of 18 U.S.C. § 1028A and 2, i.e. aggravated identity theft.

---

[1]In all, there were seven defendants charged in this case.

Case Nos.: 4:09cr73/RH/CAS; 4:12cv301/RH/CAS

Represented by retained counsel Kenneth Weisman, on February 9, 2010, Defendant entered a plea of guilty pursuant to a written plea agreement and statement of facts (docs. 102–104).  The statement of facts specifically identified four debit account numbers that Defendant had personally possessed or used, and identified the approximate total actual loss of $209,155.36 and the approximate total intended loss of $443,202.62 (doc. 102 at 4--5).

At the rearraignment, when asked whether the facts as set forth in the factual basis were true, the only fact with which Defendant disagreed was the representation that he had met co-conspirator Kennedy, one of the cashiers who participated in the scheme, face to face (doc. 227 at 10–11).  The court asked Defendant to explain his role in the offense conduct.  Defendant volunteered that he had recruited cashier Devin Paschall and provided Paschall with the skimmer.  After Paschall had obtained debit card information with the skimmer, he returned it to Defendant who would give the skimmer to "Joe."[2]  Joe provided Defendant with ATM cards and Defendant would withdraw cash from ATMs.  Defendant kept some of the money and gave some of it to Joe (doc. 227 at 15).  The court found that the there was a sufficient factual basis for the plea and accepted Defendant's guilty plea (*id.* at 31).

The Presentence Investigation Report ("PSR") was disclosed to the defense on April 9, 2010 (docs. 121; 166). Defendant's base offense level for Counts One and Two,

---

[2]"Joe" was later determined to be fictitious.

which were grouped, was six[3] (PSR ¶ 63).  Due to the application of numerous

adjustments, Defendant's total offense level was 31 (PSR ¶ 74).  Defendant received a

fourteen-level adjustment because the loss amount exceeded $400,000; three two-level

adjustments because the offense involved more than ten victims, sophisticated means

and possession or use of "device-making" equipment; a three-level adjustment due to

his role as a manager or supervisor; and a two-level adjustment for obstruction of justice

due to his provision of materially false information during the presentence interview

(PSR ¶¶ 64–70).  A consecutive two year term of imprisonment was mandated on

Counts 1 and 2 (PSR ¶ 74a).  Defendant had a criminal history category of I (PSR ¶¶

76–77).  The applicable guidelines range was 108 to 135 months, but due to the

application of statutory maximum sentences on Counts One and Two, the guidelines

sentence became 60 months on Count One, and 108 to 120 months on Count Two and

(PSR ¶¶ 99, 100).  There was a statutorily required consecutive two year sentence as to

Count Eight (PSR ¶ 99).

At sentencing,[4] Defendant acknowledged that he had read the PSR and

discussed it with counsel (doc. 210 at 3–4).  Defendant objected to the obstruction of

justice adjustment, the loss amount, and the conclusion that he was not entitled to a

reduction of acceptance of responsibility (*id.* at 4).  The court found that Defendant's

---

[3]The PSR noted that the November 1, 2008, edition of the <u>Guidelines Manual</u> was used because it was less onerous than the manual in effect on the day of sentencing (PSR ¶ 61).

[4]Sentencing for Defendant and co-defendants Reginald Voltaire and Javon Wiggins was conducted as part of the same proceeding.

false statement to probation that he obtained the skimmer from a person who did not

exist ("Joe") was obstructive conduct within the meaning of § 3C1.1 (*id.* at 9–10).

Counsel also argued that the actual loss was only $220,000 and that Defendant should

not be held accountable for the conduct of individuals he never recruited or spoke with

(*id.* at 16–17). The Government presented the testimony of co-defendant Wiggins to

explain the working of the conspiracy involving Defendant, Doguer and Wiggins (*id.* at

19–36).  The court overruled the defense objection to the quantity of loss and held that

the presentence report had correctly attributed the full amount of the loss to Defendant

(*id.* at 37–38).  Finally, counsel argued that despite the application of the obstruction

adjustment, Defendant was entitled to acceptance of responsibility (*id.* at 10–16).

Defendant's girlfriend and mother of his two-year-old child addressed the court, and

Defendant apologized for what he had done (*Id.* at 45–48).  The court sustained the

objection and reduced Defendant's offense level by three levels.  The revised guidelines

range was 78 to 97 months.  The court sentenced Defendant at the bottom of this

range, to a term of 78 months imprisonment, followed by the mandatory 24 month

consecutive sentence on Count Seven for a total of 102 months (*id.* at 53–55; doc. 156).

Defendant was also ordered to pay $209,155.36 in restitution (doc. 156).

      Defendant appealed, represented by appointed counsel Robert Augustus Harper.

Mr. Harper filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) and

moved to withdraw.  The Eleventh Circuit's independent examination of the entire

record revealed no arguable issues of merit, and it granted counsel's motion to withdraw

and affirmed Defendant's sentences and convictions (doc. 265).

Defendant raises four grounds for relief in his original § 2255 motion, and in a supplement thereto argues that his post-conviction rehabilitative efforts entitle him to an additional sentence reduction upon resentencing.   The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

General standard of review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United

<u>States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340,

1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994).

Once a matter has been decided adversely to a defendant on direct appeal, it cannot be

re-litigated in a collateral attack under section 2255.  <u>Nyhuis</u>, 211 F.3d at 1343

(quotation omitted).  Broad discretion is afforded to a court's determination of whether a

particular claim has been previously raised.  <u>Sanders v. United States</u>, 373 U.S. 1, 16

(1963) ("identical grounds may often be proved by different factual allegations . . . or

supported by different legal arguments . . . or couched in different language . . . or vary

in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct

appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred.  <u>Lynn</u>,

365 F.3d at 1234–35; <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998);  <u>McKay v.</u>

<u>United States</u>, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  <u>Lynn</u>, 365

F.3d at 1232 n. 14 (quoting <u>Mills</u>, 36 F.3d at 1055).   Absent a showing that the ground

of error was unavailable on direct appeal, a court may not consider the ground in a

section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is,

alternatively, that he is "actually innocent."  <u>Lynn</u>, 365 F.3d at 1234; <u>Bousley</u>, 523 U.S.

at 622 (citations omitted).  To show cause for procedural default, a defendant must

show that "some objective factor external to the defense prevented [him] or his counsel

from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at

689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000)

(discussing presumption of reasonableness of counsel's conduct); Lancaster v.

Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not

entitled to error-free representation").  Counsel's performance must be evaluated with a

high degree of deference and without the distorting effects of hindsight.  Strickland, 466

U.S. at 689.  To show counsel's performance was unreasonable, a defendant must

establish that "no competent counsel would have taken the action that his counsel did

take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations

omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an

experienced trial counsel, the presumption that counsel's conduct was reasonable is

even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at

1316 n.18.

      With regard to the prejudice requirement, a defendant must establish that, but for

counsel's deficient performance, the outcome of the proceeding would have been

different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome

determination," however, is insufficient; "[t]o set aside a conviction or sentence solely

because the outcome would have been different but for counsel's error may grant the

defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506

U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th

Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious

as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506

U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing

errors, a defendant must demonstrate that there is a reasonable probability that, but for

counsel's errors, the result of the proceeding would have been less harsh due to a

reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198,

203–04 (2001).  A significant increase in sentence is not required to establish prejudice,

as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for

his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401,

1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are

insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697

F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807

(11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v.

United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."  Chandler, 218 F.3d at 1313.  This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.  Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

Ground One

Defendant's first claim is the court miscalculated the amount of loss attributable

to him for sentencing purposes.  This claim, which could have been raised on appeal, is

both procedurally barred and without merit.

Defendant contends that he should have been held accountable for only the

actual loss of $209,155.36, not the "actual loss plus the intended loss," totaling over

$400,000.00.  Defendant is correct that in determining the appropriate guidelines

adjustment, "loss is the greater of actual loss or intended loss."  *See* U.S.S.G. § 2B1.1,

comment. (n.3.(A)).  Defendant's confusion appears to have arisen from the chart

contained in his PSR which sub-divides the total (intended) loss into two categories of

loss:  the actual loss requiring restitution, and the unrealized intended loss for which no

restitution was ordered or required (*see* PSR ¶ 31).  The statement of facts signed by

Defendant reflects that the approximate total intended loss was $443,202.62, although

the co-conspirators were only successful in obtaining $209,155.36 in actual loss (doc.

102 at 4).  The total intended loss as calculated by the PSR was slightly higher (PSR ¶

31).  In any event, based on the figures contained both in the statement of facts and the

PSR, the court properly applied the fourteen level increase corresponding to a loss of

more than $400,000.  *See* U.S.S.G. § 2B1.1(b)(1)(H).  Thus, even if this claim were not

procedurally barred, there was no error.  Finally, to the extent that a liberal construction

of Defendant's motion would incorporate a claim that counsel was constitutionally

ineffective for his failure to raise this issue, there is no basis for relief.   Counsel is not

constitutionally ineffective for his failure to make a frivolous objection.  Freeman v.

Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); Sneed v. Florida Dep't of Corrections, 496 F. App'x 20 (11th Cir. 2012); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002).

Ground Two

Defendant next contends that he should not have received a three level enhancement pursuant to § 3B1.1(b) for being a manager or supervisor in the charged conspiracy.  This claim is also procedurally barred and without merit.

Defendant maintains in his § 2255 motion that he was not responsible for recruiting co-defendant Paschall, that he had no decision making authority, that he never reencoded fraudulent debit cards and that no skimming device or encoder was in his possession (doc. 297 at 3).  Defendant's sworn assertions in his § 2255 motion are contradicted by the record, including his previous admissions under oath.  First, the Factual Basis for Plea expressly states that Defendant recruited Paschall into the conspiracy and provided him with a skimming device (doc. 102 at 2).  At his rearraignment, Defendant asserted under oath that his only disagreement with the facts set forth in the Factual Basis for Plea was that he had not actually met co-defendant Kennedy in person as the document suggested.  He stated that everything else contained therein was accurate (doc. 227 at 10–11).  Later in the same proceeding, when asked by the court to explain what his role had been in the conspiracy, Defendant's own words were that he had recruited Devin Paschall and provided Paschall with the skimmer (id. at 15).

Additional support for the role adjustment was presented at sentencing.  First, the defense conceded that Defendant was supervising Kennedy and Paschall, in an attempt to distance him from other conspirators (*id*. at 16).  More significantly, Wiggins testified that Defendant, as well as co-defendant Doguer, had directed Wiggins to purchase items with fraudulent debit cards; that Defendant had withdrawn funds from ATMs using the fraudulent cards; that Defendant had retrieved the skimmers from the store cashiers and encoded stolen account information onto the fraudulent cards; and that these three co-defendants could obtain $10,000 to $14,000 in one day, which was well in excess of the payment given to the cashiers for their role in the conspiracy (*id*. at 23, 26–32).  This evidence provided ample support for the application of the adjustment pursuant to U.S.S.G. § 3B1.1(b).  The court did not err in applying this guideline provision and Defendant likewise does not have a viable claim that counsel was constitutionally ineffective for his failure to object.

<u>Ground Three</u>

Defendant's third claim for relief appears to be that his sentence was improperly increased due to "double counting" where he received both a guidelines adjustment and a separate, consecutive sentence for the same conduct.  The guidelines adjustment he references is the two level adjustment pursuant to § 2B1.1(b)(10) (PSR ¶ 67).  Defendant received a two level increase pursuant to then-section 2B1.1(b)(10)(A)(i)[5] because the offense involved the possession or use of device-making equipment (PSR ¶ 67).  Alternatively, the PSR provided that the same enhancement was proper

---

[5]This section was renumber in 2011 as § 2B1.1(b)(11).

pursuant to § 2B1.1(b)(10)(B)(i) because the offense involved the production or

trafficking of unauthorized or counterfeit access devices (*id.*).  Defendant now contends

that this two level enhancement should not have applied due to his conviction in Count

Seven of aggravated identity theft.

Note 2 of the commentary to U.S.S.G. § 2B1.6 provides in pertinent part that if a

sentence under § 2B1.6 is imposed in conjunction with a sentence for an underlying

offense, the court should not apply a specific offense characteristic adjustment for the

transfer, possession, or use of a means of identification[6] when determining the sentence

for the underlying offense. U.S.S.G. § 2B1.6 comment. (n. 2).  Three appellate courts

have held that application of the enhancement under §2B1.1(b)(10)(B)(i) (now §

2B1.1(b)(11)(B)(i)) was improper in conjunction with a conviction for aggravated identity

theft.  *See* United States v. Doss, 741 F.3d 763 (7th Cir. 2013); United States v. Lyons,

556 F.3d 703, 708 (8th Cir. 2009); United States v. Jones, 551 F.3d 19, 25 (1st Cir.

2008).  However, as noted above, the PSR offered two alternative bases for application

---

[6]A "means of identification" is defined in 18 U.S.C. § 1028(d)(7) as:

. . . any name or number that may be used, alone or in conjunction with any
other information, to identify a specific individual, including any--

(A) name, social security number, date of birth, official State or government
issued driver's license or identification number, alien registration number,
government passport number, employer or taxpayer identification number;
(B) unique biometric data, such as fingerprint, voice print, retina or iris image,
or other unique physical representation;
(C) unique electronic identification number, address, or routing code; or
(D) telecommunication identifying information or access device (as defined
in section 1029(e)).

of the enhancement at issue here: § 2B1.1(b)(10)(B)(i) and § 2B1.1(b)(10)(A)(i).  The

PSR specifically reflects that it was Defendant's possession of an encoder, i.e. a device

used to produce a "means of identity," that triggered the application of §

2B1.1(b)(10)(A)(i).  This is a factual distinction that does not preclude application of the

adjustment.  *See* United States v. Wiley, 407 F. App'x 938, 942 (6th Cir. 2011) (holding

that commentary note two does not apply when the evidence shows that the defendant

produced the false identification) (citing United States v. Jones, 551 F.3d 19, 25–26 (1st

Cir. 2008); United States v. Jenkins-Watts, 574 F.3d 950, 962 (8th Cir. 2009)).  Wiggins'

testimony at sentencing that Defendant encoded fraudulent debit cards was sufficient to

support the adjustment (doc. 210 at 34).  Therefore, even if counsel had lodged a

meritorious objection to the use of § 2B1.1(b)(10)(B)(i) as a basis for the application of

the adjustment, there was no prejudice.  The undersigned also notes that co-defendant

Doguer raised this argument on appeal and the Eleventh Circuit specifically found that

application of the adjustment was proper under § 2B1.1(b)(10) because the offense

conduct in this cased involved "both the use of an encoder to produce the counterfeit

debit cards and the production of debit cards, rather than merely the 'transfer,

possession or use' of those debit cards" (*see* doc. 254 at 7).  Defendant has shown

neither court error nor deficient performance by counsel and he is not entitled to relief.

Ground Four

It is in Defendant's fourth ground for relief that he specifically assails the

performance of both trial and appellate counsel.  His allegations are conclusory and

unsupported, or otherwise without merit.

Defendant first asserts that Mr. Weisman was constitutionally ineffective because he failed to attend court hearings in Defendant's behalf.  Although Defendant did not identify the hearings in question, the record reflects that Defendant was represented by substitute counsel Tor J. Friedman at his pretrial release violation hearing and the change of plea hearing (docs. 134, 227).  During the rearraignment, Defendant assured the court, under oath, that he had had sufficient time to discuss the case with his attorney, that counsel had answered all his questions, and that he was satisfied with the way his lawyer represented him (doc. 227 at 17, 19, 22–23).  Defendant offers no suggestion in the instant motion as to how he believes he was prejudiced by the presence of a different attorney for this proceeding.  His conclusory and unsupported assertion does not entitle him to relief.

Defendant also claims that Mr. Weisman did not advise Defendant of the "circumstances of the case" and the "safety valve."  Defendant does not identify the "circumstances" of which counsel allegedly failed to advise him.  To the extent he claims counsel's performance was constitutionally deficient because counsel did not argue for the application of the safety valve, he cannot show prejudice.  Section 5C1.2 of the Sentencing Guidelines has no relevance to Defendant's case as it applies only to enumerated controlled substance offenses.  Therefore, Defendant could not qualify for "safety valve" relief.  Counsel's failure to raise a meritless argument is not constitutionally deficient.

Finally, Defendant claims that counsel did not provide him a copy of the PSR before sentencing or "advise" him about it.  Again Defendant has not offered any

meaningful argument to support a finding that he was prejudiced by any alleged deficiency in counsel's performance.  The court also notes that the record reflects that at the commencement of the sentencing hearing, Defendant confirmed that he had read his presentence report and the addendum and discussed it with counsel (doc. 210 at 3–4).  In sum, he has not shown that trial counsel's performance was constitutionally ineffective in any way.

Defendant next claims that his appellate counsel, Robert Harper, was constitutionally ineffective because Mr. Harper did not submit the arguments Defendant wanted to raise on appeal. To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.  *See* Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir.2008).  Defendant does not specify the arguments that he wanted counsel to raise on appeal, and, through the instant motion, he has not identified a single viable appellate issue.  Appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.  Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013). Defendant has not met his burden of showing that appellate counsel's decision to file an Anders brief was constitutionally deficient, and he is not entitled to relief.

Supplement to Motion to Vacate

In Defendant's supplement to his motion to vacate (doc. 299), he asks that the court consider his post-sentencing rehabilitation in re-sentencing him.  Because he is not entitled to relief on any of the claims raised in his § 2255 motion, he is not entitled to

re-sentencing.  There is no independent jurisdictional basis for the court to consider re-sentencing at this time, and therefore, no basis for relief.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 4:09cr73/RH/CAS; 4:12cv301/RH/CAS

Accordingly, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 297) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 24th day of September, 2014.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** See **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**